UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

STEVEN CHARLOTTEN,

                              Plaintiff,

         -against-                                    1:09-cv-0891 (LEK/RFT)

OFFICER LAWRENCE HEID, ALBANY
POLICE DEPARTMENT; THE CITY OF
ALBANY; JOSEPH MUIA, ESQ.,
ASSISTANT CONFLICT DEFENDER;
GASPAR CASTILLO, ESQ., ALBANY
COUNTY CONFLICT DEFENDER; and
THE ALBANY COUNTY CONFLICT
DEFENDER,

                              Defendants.

_____

**MEMORANDUM-DECISION and ORDER**

## I. INTRODUCTION

        Presently before the Court are two Motions for summary judgment, one filed on February

28, 2011 ("Castillo SJ Mot.") (Dkt. No. 37), by Defendants Gaspar M. Castillo ("Defendant

Castillo"), Joseph Muia ("Defendant Muia"), and The Albany County Conflict Defender

("Defendant Albany County C.D."); and the other on March 1, 2011 ("Heid SJ Mot.") (Dkt. No.

47), by Defendants Officer Lawrence Heid ("Defendant Heid"), Albany Police Department

("Defendant Albany P.D."), and City of Albany ("Defendant Albany").  On April 15, 2011, Plaintiff

Steven Charlotten ("Charlotten" or "Plaintiff") filed his Responses to Defendants' Motions as well

as a Cross-Motion for Summary Judgment ("Opposition") (Dkt. No. 53), and Defendants filed their

Replies thereto on April 29, 2011.  Castillo Reply (Dkt. No. 55); Heid Reply (Dkt. No. 56).

Plaintiff filed this action on August 4, 2009, alleging violations of federal and state law relating to

his arrest, subsequent plea of guilt, and imprisonment for violation of an order of protection that was later found to be invalid.  Compl. (Dkt. No. 1).  For the reasons given below, the Court grants Defendants' Motions.

**II. BACKGROUND**

Plaintiff alleges that he was falsely arrested and imprisoned by Defendants Heid, the City of Albany, and the Albany Police Department; and that Defendants Muia and Castillo, as his appointed attorneys through the office of Defendant Albany County C.D., provided him with ineffective assistance of counsel and committed legal malpractice that led to his conviction and sentence for a nonexistent crime.  Compl. ¶ 1.  On December 25, 2004, after Charlotten's arrest for the assault of his ex-girlfriend, Donna Durand, Judge John C. Egan issued a temporary order of protection set to expire on June 25, 2005.  Heid Ex. F (Dkt. No. 47-7) ("December 25 T.O.P.").  This order specified in writing "STAY AWAY NO CONTACT" as an additional condition that Charlotten was required to observe.  Id.  On February 18, 2005, Charlotten entered a plea of guilty to assault in the third degree and thereby satisfied the pending charges.  Pl.'s Statement of Material Facts ("PSMF") (Dkt. No.53-5) ¶ 21.  On March 14, 2005, Charlotten was sentenced to four months in prison, but because he had already served that period of time, he was released.  Id. ¶¶ 23.  As a result, the temporary order of protection became void; a permanent order of protection was never issued.  Id. ¶¶ 22, 24; People v. Charlotten, 843 N.Y.S.2d 697, 698-99 (N.Y. App. Div. 2007) ("Charlotten I").

On March 19, 2005 – five days after Charlotten's release and the expiration of the December 25 T.O.P. – Ms. Durand called 911 to report a domestic violence incident and Defendant Heid was dispatched to respond at 123 Central Avenue in Albany, New York, at approximately 1:02 a.m. Def. Heid Statement of Material Facts ("Heid SMF") (Dkt. No. 47-13) ¶¶ 7-8.  According to both

Defendant Heid and Ms. Durand, Ms. Durand told Defendant Heid that she had an order of protection in her favor against Charlotten, and that Charlotten was intoxicated and following her on Central Avenue while cursing at her and threatening to kill her.  Heid SMF ¶¶ 12-13; Heid Aff. (Dkt. No. 47-5) ¶¶ 11-12; Heid Ex. H ("Domestic Incident Report") (Dkt. No. 47-9); Heid Ex. I ("March 19 Arrest Report") (Dkt. No. 47-10); Heid Ex. J (Dkt. No. 47-11); Durand Statement ("Durand Stmt.") (Dkt. No. 56-1).  Defendant Heid states that he ran Charlotten's information through the New York State Police Information Network ("NYSPIN"), which indicated that there was a valid protective order in place against Charlotten and in Ms. Durand's favor.  Heid SMF ¶ 15 (citing Heid Aff. ¶¶ 14-15; Heid Ex. G (Dkt. No. 47-6) (March 19, 2005 call ticket)).  Defendant Heid also states that he called Defendant Albany P.D.'s South Station, where an employee confirmed that there was a valid protection order against Charlotten.  Heid Aff. ¶¶ 16-17.  Plaintiff objects to this narrative of events and declares that Defendant Heid arrested him, stating, "You are being detained for violating an Order of Protection issued by Judge Carter," and that Plaintiff told Defendant Heid that there was no protective order issued by Judge Carter against him.[1]  Charlotten Aff. (Dkt. No. 53-2) ¶¶ 27-28.  Plaintiff further claims that he overheard Defendant Heid ask another officer to check the computer and that the officer "responded words to the effect, 'No, nothing in the system.'"  Id. ¶ 31.  Plaintiff was taken to the police station and charged with criminal contempt in the first degree for violating a "no contact" order of protection.  Heid Ex. G.

On August 10, 2005, Plaintiff pled guilty to criminal contempt in the first degree in exchange for one to three years in prison.  Plea Hr'g Tr., Heid Ex. K (Dkt. No. 38-14).  Defendant

---

[1] Defendant Heid claims that he mistook the signature on the protective order for that of Judge William Carter, who, according to Charlotten, had signed an earlier order of protection against Charlotten on October 25, 2004, but that order did not require no contact with Ms. Durand. Charlotten Aff. ¶¶ 15-16; see also William Carter Aff. (Dkt. No. 54-3) at ¶ 9.

Muia was acting as counsel for Plaintiff at this time.  Muia Aff. ¶ 3.  Defendant Muia claims that prior to Charlotten's plea, he called Albany City Court, Criminal Division, to verify that they had a protective order dated December 25, 2004, and that the court confirmed this to him.  Id. ¶ 5.

Plaintiff was sentenced on October 12, 2005; because he failed to appear at the scheduled time of the hearing, Defendant Castillo was required to replace Defendant Muia by the time Plaintiff arrived.  Castillo Aff. (Dkt. No. 40) ¶ 9.  Between his guilty plea on August 10, 2005, and his sentencing on October 12, 2005, Plaintiff had been arrested again and pled guilty to violating another protective order against Ms. Durand.  He also made statements in the presentence report that indicated he in fact did not believe himself to be guilty of violating the December 25 T.O.P.  Muia Ex. O-I (Dkt. No. 38-19) at 3.  Defendant Castillo also conveyed this to the judge at the sentencing hearing, stating, "Mr. Charlotten's explanation . . . is that at the time of his arrest he wasn't aware of that order that he pled guilty to."  Sentencing Hr'g Tr. (Dkt. No. 38-20) 8:6-10.  Plaintiff also asked at the sentencing hearing, "Is that a valid order of protection?"  Id. 11:17-19.  Finding that both Plaintiff's more recent conviction and his statements contradicted his earlier plea of guilty, the sentencing judge sentenced Plaintiff to one and a third to four years in state prison.  Id. 10:7-19; 13:21-14:3.  The sentencing judge also issued a "no-contact stay-away order of protection" with respect to Ms. Durand, set to expire October 11, 2011.  Id. 14:4-13.

Plaintiff filed two motions to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10 ("CPL 440.10"), both of which were denied without a hearing.  Charlotten I, 843 N.Y.S.2d at 698.  Plaintiff then filed an appeal seeking reversal of his conviction on the grounds that the December 25 T.O.P. was a nullity at the time of his arrest.  The State did not contest the nullity of the December 25 T.O.P. on appeal, and the Supreme Court, Appellate

Division, Third Department found that a hearing pursuant to CPL 440.10 was warranted to determine whether Charlotten had received ineffective assistance of counsel in pleading guilty to criminal contempt.  It held the appeal in abeyance and remanded the matter to the County Court of Albany County to conduct a hearing pursuant to CPL 440.10.  Id. at 698.  After the county court conducted these proceedings ("CPL 440 proceedings"), the Appellate Division reversed Charlotten's conviction, concluding that "the record supports a finding that counsel deprived [Charlotten] of meaningful representation by allowing him to plead guilty to a violation of a court order which was a nullity."  People v. Charlotten, 857 N.Y.S.2d 756, 757 (N.Y. App. Div. 2008) ("Charlotten II").  More than a year later, on August 4, 2009, Plaintiff filed the present action in federal court.

## III. STANDARD OF REVIEW

Rule 56 of the Federal Rules instructs a court to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991).

However, if the moving party has shown that there is no genuine dispute as to any material fact, the burden shifts to the non-moving party to demonstrate "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  This requires the non-moving party to do "more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v.

Zenith Corp., 475 U.S. 574, 586 (1986).

At the same time, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998).  The Court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them."  Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV. DISCUSSION

### A. Defendants Heid, Albany, and Albany P.D.

Plaintiff brings the following four claims against Defendants Heid, Albany, and Albany P.D.: (1) illegal detention in violation of the Fourth Amendment pursuant to 28 U.S.C. § 1983 ("§ 1983"); (2) false arrest under New York state law; (3) malicious prosecution in violation of the Fourth Amendment pursuant to § 1983; and (4) malicious prosecution under New York state law. Compl. ¶¶ 63-100.  Defendants Heid, Albany, and Albany P.D. argue that summary judgment is warranted because: (1) Defendant Heid had probable cause to arrest Plaintiff; (2) Plaintiff has failed to show malice on the part of either Defendant Heid or Defendant Albany sufficient to establish a malicious prosecution claim; (3) Defendant Heid has qualified immunity; (4) Defendant Albany cannot be held liable under § 1983; and (5) Defendant Albany P.D. is not a proper party to this action.  Def. Heid's Memorandum of law in support of summary judgment ("HML") (Dkt. No. 47-14).  These Defendants have also raised in their Answer, without further briefing in their Motion, that the action is barred by the applicable statute of limitations.  Def. Heid's Answer ("Heid Answer") ¶ 140.  For the reasons that follow, the Court finds that summary judgment with respect to

each of these Defendants is warranted.

### 1. Illegal Detention Under Fourth Amendment and § 1983

The Court agrees with Defendants that Plaintiff's § 1983 claim of illegal detention under the Fourth Amendment is barred by the statute of limitations.  The applicable statute of limitations for a § 1983 claim is the same as that for personal injury torts in the state in which the cause of action arose; in the state of New York, the relevant statute of limitations is three years.  Owens v. Okure, 488 U.S. 235, 237, 251 (1989) (citing N.Y. CIVIL PRACTICE LAW § 214(5) (MCKINNEY 2011)). However, the date on which the cause of action accrues is governed by federal law.  Wallace v. Kato, 549 U.S. 384, 388 (2007).  The Supreme Court has held that a cause of action for unlawful detention under § 1983 accrues not at the time a plaintiff is released from custody, but rather, "when legal process was initiated against him."  Id. at 390; cf. Heck v. Humphrey, 512 U.S. 477, 484 (1994) (contrasting malicious prosecution claims with ones for false arrest and imprisonment because the former "permits damages for confinement imposed pursuant to legal process") (quoting W. KEETON, D. DOBBS, R. KEETON, & D. OWEN, PROSSER & KEETON ON LAW OF TORTS 888 (5th ed. 1984)).  In this case, such legal process would have commenced, at the latest, when Plaintiff appeared before a judge in state court and pled guilty to criminal contempt on August 10, 2005.  See Wallace, 549 U.S. at 389 ("Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process – when, for example, he is bound over by a magistrate or arraigned on charges.") (emphasis in original).  As Plaintiff did not file the present Complaint until August 4, 2009, his claim for false imprisonment is barred by the statute of limitations.

### 2. New York False Arrest and Imprisonment Claims

Plaintiff's state law false arrest claim is also barred by the applicable statute of limitations. Unlike the federal false arrest claim, under New York law, Plaintiff's cause of action for the torts of false arrest and false imprisonment accrued on the termination of the confinement.  Nunez v. City of N.Y., 762 N.Y.S.2d 384, 385 (N.Y. App. Div. 2003).  However, under New York law Plaintiff was also required to file a notice of his claim within 90 days after it arose.  N.Y. GEN. MUN. LAW § 50-e(1)(a) (MCKINNEY 2011); Nunez, 762 N.Y.S.2d at 385.  Plaintiff does not state in his Complaint the exact date on which he was released from prison, but the Court notes that the order from the Appellate Division was issued on May 1, 2008, and that Plaintiff does allege that he was imprisoned for two and a half years, which is consistent with the conclusion that he was imprisoned from his sentencing in October 2005 until the Appellate Division's opinion was issued in May 2008. Charlotten II, 857 N.Y.S.2d 756; Compl. ¶ 75.  In any case, when Plaintiff filed his Complaint on August 4, 2009, the 90-day statute of limitations had long since barred his state law false arrest and imprisonment claims.

### 3.  Malicious Prosecution Under Fourth Amendment and § 1983

Although Plaintiff's false arrest and imprisonment claims are time-barred under both state and federal law, that is not the case for Plaintiff's malicious prosecution claim raised pursuant to § 1983.  The governing statute of limitations is also three years because this is a § 1983 claim, and, "[u]nder federal law, a claim of malicious prosecution accrues when the underlying criminal proceedings are conclusively terminated."  Murphy v. Lynn, 53 F.3d 547, 548 (2d Cir. 1995).  The Court therefore will address Plaintiff's malicious prosecution claim against Defendants Heid, Albany, and Albany P.D.

*a. Defendant Heid*

-8-

To prevail on a malicious prosecution claim against a state actor under § 1983, "a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." Manganiello v. City of N.Y., 612 F.3d 149, 161 (2d Cir. 2010) (internal citations omitted). In New York, a plaintiff must prove the following to establish a claim for malicious prosecution: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995); see also Rivera v. County of Nassau, 933 N.Y.S.2d 168, 170 (N.Y. App. Div. 2011). Defendant Heid argues (1) that he is protected by qualified immunity and cannot be held liable for violating Plaintiff's Fourth Amendment rights under § 1983; and (2) that Plaintiff has failed to establish as a matter of state law either a lack of probable cause or malice on the part of Defendant Heid. HML at 2-12. For the reasons given below, the Court agrees with these arguments and grants summary judgment in Defendant Heid's favor.

## 1. Probable Cause

Plaintiff has plainly satisfied the first two requirements for a malicious prosecution claim under New York state law, but the Court finds that he has failed to establish any genuine issue of material fact regarding either a lack of probable cause or actual malice. "[I]n New York, a conviction ultimately upset is accorded only the force of prima facie evidence of probable cause; this evidence can be surmounted in a suit for malicious prosecution if the plaintiff can show that the judgment was obtained by fraudulent or otherwise undue means." McCray v. City of N.Y., Nos. 03 Civ. 9685, 03 Civ. 9974, 03 Civ. 10080, 032007 WL 4352748, at *22 (S.D.N.Y. Dec. 11, 2007)

(citing <u>Williams v. City of N.Y.</u>, 508 F.2d 356, 359-60 (2d Cir. 1974)).  The state court that

overturned Plaintiff's conviction did so on the finding of ineffective assistance of counsel, and did

not address the issue of whether the arresting officer had probable cause to arrest Plaintiff.  <u>See</u>

<u>Williams v. Town of Greenburgh</u>, 535 F.3d 71, 79 n.5 (2d Cir. 2008) (noting that probable cause for

arrest existed despite plaintiff's subsequent acquittal of charges because of "the narrow basis for

acquittal").  In any event, the Court agrees with Defendants that Plaintiff has failed to make such a

showing here with respect to Defendant Heid.

"An officer has probable cause to arrest when he or she has 'knowledge or reasonably

trustworthy information of facts and circumstances that are sufficient to warrant a person of

reasonable caution in the belief that the person to be arrest has committed or is committing a

crime.'" <u>Rutigliano v. City of N.Y.</u>, 326 Fed. Appx. 5, 7-8 (2d Cir. 2009) (quoting <u>Weyant v. Okst</u>,

101 F.3d 845, 852 (2d Cir. 1996)).  In assessing the reasonableness of this belief, the Court

considers that "[a]n arresting officer advised of a crime by a person who claims to be the victim, and

who has signed a complaint or information charging someone with the crime, has probable cause to

effect an arrest absent circumstances the raise doubts as to the victim's veracity."  <u>Singer v. Fulton</u>

<u>County Sheriff</u>, 63 F.3d 110, 119 (2d Cir. 1995).  Additionally, "[t]he veracity of citizen

complain[an]ts who are the victims of the very crime they report to the police is assumed."

<u>Miloslavsky v. AES Eng'g Soc'y, Inc.</u>, 808 F. Supp. 351, 355 (S.D.N.Y. 1992) (citing <u>Adams v.</u>

<u>Williams</u>, 407 U.S. 143, 146-47 (1972)); <u>Cornell v. Kapral</u>, No. 5:09-CV-0387, 2011 WL 94063, at

*7 n.4 (N.D.N.Y. Jan. 11, 2011).

In this case, Ms. Durand reported to Defendant Heid that she had an order of protection

against Charlotten, and that Charlotten had been harassing her throughout the evening, harassment

that included threatening to kill her.  Heid SMF ¶¶ 12-13; Heid Aff. (Dkt. No. 47-5) ¶¶ 11-12; Heid

Ex. H ("Domestic Incident Report") (Dkt. No. 47-9); Heid Ex. I ("March 19 Arrest Report") (Dkt.

No. 47-10); Heid Ex. J (Dkt. No. 47-11); Durand Statement ("Durand Stmt.") (Dkt. No. 56-1).

Plaintiff now denies responsibility for this and any other disputes between him and Ms. Durand by

calling her "controlling and manipulating" in his affidavit, in addition to claiming that many of their

arguments were merely "a result of Ms. Durand's insecurities in our relationship," and insisting that

after the orders of protection were issued, he attempted to comply with them but would see Ms.

Durand walking on the streets of Albany and such sightings "seemed to immediately result in a

verbal altercation."  Charlotten Aff. ¶¶ 5, 11.  Even accepting these statements as true, they are

irrelevant to the issue of whether Defendant had probable cause to arrest Plaintiff on March 19,

2005.  The blanket denials of wrongdoing that Plaintiff claims he made to Defendant Heid on that

night, even if true, are an insufficient factual basis on which the Court could find that Defendant

Heid should have doubted Ms. Durand's veracity.  See Fulton v. Robinson, 289 F.3d 188, 195 (2d

Cir. 2002); Coyle v. Coyle, 354 F. Supp. 2d 207, 211-12 (E.D.N.Y. 2005); Carthew v. County of

Suffolk, 709 F. Supp. 2d 188, 197 (E.D.N.Y. 2010).

 Plaintiff also claims that Defendant Heid lacked probable cause to arrest him because he

failed to ascertain that there was in fact a valid order of protection against Plaintiff beforehand.

However, the Court agrees with Defendant Heid that, even if true, such failure does not establish

that Defendant Heid lacked probable cause to arrest Plaintiff.  "[A] mistake about relevant facts . . .

does not undermine the existence of probable cause."  Greenburgh, 535 F.3d at 79 (citing United

States v. Jenkins, 452 F.3d 207, 212 (2d Cir. 2006)); see also Welch v. City of N.Y., No. 95-Civ.

8953, 1997 WL 436382, at *5 (S.D.N.Y. Aug. 4, 1997) (finding probable cause to arrest plaintiff for

violating facially valid order of protection because "probable cause to arrest can exist even when the arrest is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying upon that information.") (citing Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)) (internal quotation omitted).  "[B]ecause probable cause does not require the police to be certain that subsequent prosecution of the arrestee will be successful, it is of no consequence that a more thorough or more probing investigation might have cast doubt on the situation."  Coyle, 354 F. Supp. 2d at 212 (citations and quotations omitted).

In this case, the March 19 Arrest Report cites to the December 25 T.O.P. as the order of protection that Plaintiff had violated.  Heid Ex. H.  Although it incorrectly states that it was signed by Judge Carter, also states that the order has an expiration date of June 25, 2005, indicating that it was facially valid.  Id.; see also December 25 T.O.P.  Coupled with Ms. Durand's statements that she had an order of protection against Plaintiff, Officer Heid had a reasonable belief that Plaintiff had violated a valid order of protection.  See Coyle, 354 F. Supp. 2d at 212 (finding that detectives were not required to ascertain validity of temporary order of protection in order to determine they had probable cause to arrest plaintiff for violating temporary order of protection, where they had no reason to question complainant's veracity).  The Court therefore finds that Plaintiff has failed to rebut the presumption of probable cause and that summary judgment on his malicious prosecution claim is warranted in Defendant Heid's favor.

## 2. Absence of Malice

Even assuming *arguendo* that Defendant Heid lacked probable cause to arrest Plaintiff, Plaintiff has still failed to establish the element of malice necessary to succeed on his malicious prosecution claim against Defendant Heid.  This element "does not have to be an actual spite or

hatred; it means only that the defendants must have commenced the proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." Manbeck v. Micka, 640 F. Supp. 2d 351, 377 (S.D.N.Y. 2009) (citations and quotations omitted).  Indeed, "a plaintiff need not demonstrate the defendant's intent to do him or her personal harm, but need only show a reckless or grossly negligent disregard for his or her rights."  Putnam v. County of Steuben, 876 N.Y.S.2d 819, 821 (N.Y. App. Div. 2009) (citation and quotation omitted).

Here, the Court finds that Plaintiff has not provided sufficient evidence from which a reasonable juror could infer that Defendant Heid acted with any improper motive or reckless disregard of Plaintiff's rights in arresting him.  For the reasons already discussed above, Defendant Heid had a reasonable belief that probable cause existed to arrest Plaintiff.  Nor has Plaintiff provided any proof that Defendant Heid's conduct "deviated so drastically from proper police procedure as to demonstrate an intentional or reckless disregard for proper procedures."  Haynes v. City of N.Y., 29 N.Y.S.2d 143, 146 (N.Y. App. Div. 2006) (citation and quotation omitted). Without anything further, Plaintiff's claim that Defendant Heid failed to ascertain whether the December 25 T.O.P. was valid at the time of arrest, even if true, does not establish actual malice on his part.  See Husbands ex rel. Forde v. City of N.Y., 335 Fed. Appx. 124, 128 (2d Cir. 2009) (finding no suggestion of malice where, inter alia, officer who identified plaintiff as shooter had no prior involvement with plaintiff and nothing in the record suggested malice on officer's part); Espada v. Schneider, 522 F. Supp. 2d 544, 554 (S.D.N.Y. 2007) (no malice where plaintiff failed to show any "collateral motive" on the part of officer and produced no evidence that officer "deliberately falsified his statements in support of the criminal complaint"); Dukes v. City of N.Y., 879 F. Supp. 335, 344 (S.D.N.Y. 1995) (finding that actual malice on part of arresting officer could

-13-

not be inferred from refusal to interview witnesses produced by arrestee's father in the hours

following arrest).  Accordingly, Plaintiff's malicious prosecution claim must fail and summary

judgment is warranted in Defendant Heid's favor.

### 3. Qualified Immunity

The Court also agrees with Defendant Heid that he is entitled to summary judgment on the

basis of qualified immunity.  "The doctrine of qualified immunity shields police officers acting in

their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate

clearly-established rights of which an objectively reasonable official would have known."  Thomas

v. Roach, 165 F.3d 137, 142 (2d Cir. 1999) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

A defendant is entitled to summary judgment on qualified immunity grounds if

> no reasonable jury, looking at the evidence in the light most favorable to, and drawing all
> inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable
> for the defendant to believe that he was acting in a fashion that did not clearly violate an
> established federally protected right.

Thomas, 165 F.3d at 143 (citation and quotation omitted).  Furthermore, a defendant officer in a

malicious prosecution suit "benefit[s] from qualified immunity . . . if it was objectively reasonable

for [him] to believe [he] did have probable cause" to arrest the plaintiff.  Simons v. Fitzgerald, 287

Fed. Appx. 924, 926 (2d Cir. 2008).  While the Court has already determined that probable cause

existed in this case, even in the absence of probable cause the Court considers that it was objectively

reasonable for Defendant Heid to believe that he had probable cause to arrest Plaintiff.  In addition

to the factors discussed above that would have given Defendant Heid a reasonable belief that he had

probable cause to arrest Plaintiff, courts in this Circuit have recognized that police officers

addressing domestic disputes like the one between Plaintiff and Ms. Durand "are in a delicate

position" because:

-14-

> [i]f an officer accepts the view of the complaining witness, he may find himself a defendant in an action like this. But it can be worse. If the officer determines to reject the complainant's view and the defendant who is the subject of the Order of Protection commits an act of violence against that complaint – and there are reported instances in which the failure to enforce led to horrific consequences . . . the officer may find himself sued for not taking aggressive enough action in enforcing the Order.

Little v. Massari, 526 F. Supp. 2d 371, 377 (E.D.N.Y. 2007) (internal citations omitted). See also

Lee v. Sandberg, 136 F.3d 94, 104 (2d Cir. 1997) ("[G]iven the extraordinarily difficult judgment

decisions that law enforcement officers must make in domestic violence situations, and the presence

of factors here that suggest that [complainant's] statements were not incredible, we hold that as a

matter of law, the State Troopers' actions were objectively reasonable.") (citing Hunter v. Bryant,

502 U.S. 224, 228 (1991)). Because Defendant Heid had a reasonable belief that probable cause

existed, the Court concludes that his actions in this case are shielded by qualified immunity and that

he is entitled to summary judgment as a result.

### b. Defendant Albany

In order to show that a municipality is liable under § 1983 for malicious prosecution, a

plaintiff must establish that a municipal policy or custom directly caused the complained-of

constitutional injury; a theory of *respondeat superior* or vicarious liability cannot give rise to

municipal liability under § 1983. Canton v. Harris, 489 U.S. 378, 385 (1989); see also Collins v.

City of Harker Heights, 503 U.S. 115, 120-121 (1992). "Circumstantial proof, such as evidence that

the municipality so failed to train its employees as to display a deliberate indifference to the

constitutional rights of those within its jurisdiction" may support a finding that a policy or custom

existed. Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991). Plaintiff has provided

no evidence that would support a finding of such a policy or custom. Accordingly, summary

judgment on this claim is also warranted in Defendant Albany's favor.

*c. Defendant Albany P.D.*

Summary judgment on Plaintiff's § 1983 claim for malicious prosecution is also warranted in favor of Defendant Albany P.D., as it is well settled that "a police department is an administrative arm of the municipal corporation," and cannot be sued under § 1983 "because it does not exist separate and apart from the municipality and does not have its own legal identity." Baker v. Willett, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (citations omitted). Defendant Albany P.D. is therefore also entitled to summary judgment in its favor with respect to Plaintiff's malicious prosecution claim.

### 4. Malicious Prosecution Claim Under New York State Law

Plaintiff's malicious prosecution claim against Defendants under New York state law also warrants summary judgment in Defendants' favor because it is time-barred. Under New York state law, the statute of limitations for a malicious prosecution claim is one year only, and accrues when there is a favorable termination of criminal proceedings against the plaintiff. N.Y. C.P.L.R. 215(3) (MCKINNEY 2011); Roman v. Comp USA, Inc., 832 N.Y.S.2d 270, 272 (N.Y. App. Div. 2007). Here, the favorable termination occurred on May 1, 2008, when the Appellate Division issued the order vacating Plaintiff's conviction. Charlotten II, 857 N.Y.S.2d 756. Because Plaintiff did not file this Complaint in federal court until August 4, 2009, his state law malicious prosecution claim is barred by the applicable statute of limitations.

### B. Defendants Muia, Castillo, and Albany County Conflict Defenders

The primary legal arguments that Defendants Castillo, Muia, and Albany County C.D. advance in favor of summary judgment are that: (1) the doctrine of *res judicata* does not apply with respect to the New York Appellate Division's finding that Plaintiff received ineffective assistance of

counsel, insofar as it was made in the context of a criminal case and does not give rise to civil liability for legal malpractice; (2) Plaintiff has failed to establish ineffective assistance of counsel under the Sixth Amendment; (3) the Court lacks jurisdiction over Plaintiffs' legal malpractice claim; and (4) Plaintiff has failed to establish proximate cause sufficient to establish a claim for legal malpractice.  Def. Castillo's Memorandum of law in support of summary judgment ("CML") (Dkt. No. 44) at 3-5, 8-9, 12-15; Castillo Reply at 1-6, 13-15.  Beyond these arguments, the thrust of Defendants Castillo, Muia, and Albany County C.D.'s defense appears to be that Plaintiff knew the December 25 T.O.P. was invalid, but attempted to game the system by willfully deceiving Defendants into believing that the December 25 T.O.P. was valid because pleading guilty to violating it would enable him to avoid facing a harsher sentence for other offenses.  See CML at 6-8, 15-18; Castillo Reply at 5, 7-12.

**1. Ineffective Assistance of Counsel Under Sixth Amendment and § 1983**

*a. Defendants Muia and Castillo*

Plaintiff claims, pursuant to § 1983, that Defendants Muia and Castillo violated his constitutional right to effective assistance of counsel under the Sixth Amendment.  Compl. ¶¶ 121-124.  Because Defendants Muia and Castillo were not acting "under color of state law" for purposes of § 1983, this claim fails and Defendants are entitled to summary judgment on this claim.

Plaintiff argues that Defendants Muia and Castillo may still be considered to have acted under color of state law under § 1983 because their obligation to ascertain whether the December 25 T.O.P. was valid dealt with an "investigative" function.  This argument is without merit.  "[T]he determination whether a public defender is a state actor for a particular purpose depends on the nature and context of the function he is performing."  Georgia v. McCollum, 505 U.S. 42, 54

(1992).  While "intimat[ing] no views as to a public defender's liability for malpractice under state

tort law," in the context of § 1983 claims the Supreme Court has held that "a public defender does

not act under color of state law when performing a lawyer's traditional functions as counsel to a

defendant in a criminal proceeding."  Polk County v. Dodson, 454 U.S. 312, 325 (1981).  At the

same time, the Supreme Court has speculated that "[i]t may be . . . that a public defender also would

act under color of state law while performing certain administrative and possibly investigative

functions."  Id. (citing Branti v. Finkel, 445 U.S. 507 (1980); Imbler v. Pachtman, 424 U.S. 409,

430-31 (1976)).

Plaintiff's attempt to categorize Defendants Muia and Castillo's failure to challenge the

validity of the December 25 T.O.P. as an "investigative" failure, rather than relating to a traditional

function of counsel, is unavailing.  Here, Defendants Muia and Castillo's actions – or lack thereof –

fit squarely within the category of those which constitute traditional functions of counsel in a

criminal proceeding.  In their respective roles in persuading Plaintiff to plead guilty and in

representing him at his sentencing hearing, Defendants Muia and Castillo were performing

traditional functions of counsel for Plaintiff, and therefore cannot be deemed "state actors" under §

1983.  See Nicholson v. Lenczewski, 356 F. Supp. 2d 157, 162 (D. Conn. 2005) (dismissing § 1983

claims against public defender alleged to have afforded plaintiff ineffective assistance of counsel by

attempting to persuade plaintiff to plead guilty because "[r]epresenting a client at trial is part of the

traditional function of counsel to a criminal defendant"); Cruz v. Superior Court Judges, No.

3:04CV1103, 2005 WL 677282, at *5 (D. Conn. Mar. 21, 2005) (dismissing § 1983 claims against

public defender where plaintiff had alleged only that defendant had failed to represent him properly

in context of guilty plea, because "[r]epresenting a client at trial and during plea negotiations is part

-18-

of the traditional function of counsel to a criminal defendant"); cf. Branti, 445 U.S. 507 (finding

public defender was a state actor in making hiring and firing decisions on behalf of the state).

       Plaintiff also argues that Defendants Muia and Castillo acted under color of state law

because they conspired with the state to deprive him of his Sixth Amendment rights.  PML at 31-32.

"If a public defender conspires with a state official to deprive a criminal defendant of his

constitutional rights . . . the public defender is deemed to have been acting under color of state law."

Cruz, 2005 WL 677282, at *5 (citing Tower v. Glover, 467 U.S. 914, 920-22 (1984)).  In order to

establish that an individual conspired with state actors for purposes of § 1983, a plaintiff must show

that (1) there was an agreement between the individual and a state actor; (2) "to act in concert to

inflict an unconstitutional injury"; and (3) that there was "an overt act done in furtherance of that

goal causing damages."  Ciambriello v. County of Nassau, 292 F.3d 307, 324-325 (2d Cir. 2002).

"[C]omplaints containing only conclusory, vague, or general allegations that the defendants have

engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed;

diffuse and expansive allegations are insufficient, unless amplified by specific instances of

misconduct."  Dwares v. City of N.Y., 985 F.2d 94, 100 (2d Cir. 1993), overruled on other grounds,

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164

(1993); see also Angola v. Civiletti, 666 F.2d 1, 4 (2d Cir. 1981) (noting that § 1983 claims are "so

easily made and can precipitate such protracted proceedings . . . that . . . detailed fact pleading is

required to withstand a motion to dismiss").

       In support of his conspiracy claim, Plaintiff points only to statements made by Defendant

Muia in his affidavit that he did not investigate whether the December 25 T.O.P. was actually valid

because (1) he trusted Defendant Heid's "reputation and my experience with him as a very

professional and efficient officer" and "had no reason to doubt the accuracy of his complaint," and (2) he "had always had respectful and cordial relationships" with the prosecuting attorney and that they had "mutual respect for one another."  PML at 31 (citing Muia Aff. ¶¶ 7, 10).  At most, these statements support an inference that Defendant Muia failed to adequately fulfill his duty as counsel by simply assuming that the December 25 T.O.P. was valid based on the word of state officials. Nowhere does Plaintiff provide evidence to support a finding that either Defendant Muia or Defendant Castillo intentionally withheld information from him or coerced him to plead guilty knowing that the December 25 T.O.P. was invalid.  See Hernandez v. Dormer, No. 09 CV 5549, 2011 WL 817414 at *13 (E.D.N.Y. Feb. 25, 2011).  While Defendant Muia's statements may be relevant to the issue of his liability for legal malpractice, his acknowledged trust in Defendant Heid and the prosecutor's professional capabilities does not rise to the level of an "overt act taken in furtherance of [a] purported conspiracy" between Defendant and the state against Plaintiff.  Allen v. Mattingly, No. 10 CV 0667, 2011 WL 1261103, at *15 (E.D.N.Y. Mar. 29, 2011); see also Braxton v. Brown, No. 96 CV 187, 1997 WL 43525, at *3 (E.D.N.Y. Jan. 28, 1997) (dismissing claim of conspiracy where "plaintiff fails to allege any facts supporting an inference that the Defense Attorney defendants colluded with the District Attorney defendants.  While plaintiff's allegations might support a state law malpractice action against his former defense attorneys, they do not support a federal court's exercise of jurisdiction under Section 1983.").  Defendants Muia and Castillo are therefore not state actors under § 1983 and are entitled to summary judgment in their favor on these claims.

### b. Defendant Albany C.D.

Defendant Albany C.D. is also entitled to summary judgment on Plaintiff's § 1983 claim.

Assuming it may be sued as a unit of local government, Defendant Albany C.D. is subject to § 1983 liability only if Plaintiff can establish a municipal policy or custom that directly caused the complained-of constitutional injury.  See Monell v. Dep't of Social Servs. of City of N.Y., 436 U.S. 658 (1978); Morris v. Jefferson County Pub. Defender's Office, No. 7:09-CV-1412, 2010 WL 455467, at *2 (N.D.N.Y. Feb. 3, 2010).  Plaintiff argues in a footnote that a policy may be inferred here by virtue of Defendant Castillo's status as the Conflict Defender and therefore an official "in charge" within Defendant Albany C.D.'s office.  PML at 13 n.2 (citing Gentile v. County of Suffolk, 926 F.2d 142 (2d Cir 1991)).  However, the fact that Defendant Castillo, while acting in the capacity of Plaintiff's attorney, also happened to be an official in charge with Defendant Albany C.D., does not automatically give rise to a finding of municipal liability.  "[L]iability may not be established against a defendant simply because that defendant was a policy maker at the time unconstitutional acts were committed."  Brock v. Wright, 315 F.3d 158, 166 (2d Cir. 2003) (internal citations and quotations omitted).  However, "where unconstitutional acts are the result of a policy promulgated by the defendant, a valid § 1983 action may lie."  Id. (emphasis in original).  Plaintiff has provided no additional facts that would indicate the existence of any impermissible policy, pursuant to which his complained-of injury occurred.  See Dodson, 454 U.S. at 326.

Moreover, "[o]nly those municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability."  City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988) (citations and quotations omitted).  The Second Circuit has expressed the view that an official whose conduct amounts "only to tortious acts under the color of law" – the type of conduct that Plaintiff is alleging here – is not acting as a "final policymaker" under § 1983.  See Roe v. City of Waterbury, 542 F.3d 31, 40 (2d Cir. 2008).  Even if Defendant Castillo can be said to

have final policymaking authority within Defendant Albany C.D., "the critical inquiry is not

whether an official generally has final policymaking authority; rather, the court must specifically

determine whether the government official is a final policymaker with respect to the particular

conduct challenged in the lawsuit." Id. at 37.  At Plaintiff's sentencing hearing, Defendant Castillo

was acting not as a policymaker, but as an individual attorney representing an individual client.

Without further evidence, his actions with respect to Plaintiff do not in and of themselves evince a

municipal policy or custom that can be attributed to the County.  Accordingly, summary judgment

on this claim is also warranted in Defendant Albany C.D.'s favor.

### 2. Legal Malpractice

Having dismissed the federal law claims, the Court must determine whether exercising

supplemental jurisdiction is warranted under 28 U.S.C. § 1367.  Subsection (a) of that section

provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts
> shall have supplemental jurisdiction over all other claims that are so related to claims in the
> action within such original jurisdiction that they form part of the same case or controversy
> under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  Subsection (c), however, permits a district court to decline to exercise

supplemental jurisdiction over claims if, inter alia, the court "has dismissed all claims over which it

has original jurisdiction." Id. § 1367(c)(3).

The decision whether to exercise supplemental jurisdiction over a state law claim is left to

the discretion of the district court.  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726

(1966) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right.").  A court must

"consider and weigh in each case, and at every stage of the litigation, the values of judicial

economy, convenience, fairness, and comity in order to decide whether to exercise [supplemental]

jurisdiction." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (citing Gibbs, 383 U.S. at 726-27).

Here, the Court finds that declining to exercise supplemental jurisdiction over Plaintiff's legal malpractice claim is appropriate. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon, 484 U.S. at 350 n.7. Moreover, the Second Circuit has held that a district court abused its discretion in retaining jurisdiction over a state law claim after the federal claims had been dismissed, where there were disputed questions of fact that would require a trial on the state law claim. Rounseville v. Zahl, 13 F.3d 625, 631 (2d Cir. 1994). In Rounseville, the Second Circuit considered that while entertaining the state law claim at the summary judgment stage "offered some prospect of ending the litigation entirely," the presence of disputed questions of fact necessitating a trial meant that the case "involve[d] a complete hegemony of state law claims, such that relinquishment of federal court jurisdiction is warranted." Id. (quoting Robison v. Via, 821 F.2d 913, 925-27 (2d Cir. 1987)) (emphasis in original); see also N.Y. Mercantile Exch. v. IntercontinentalExchange, Inc., 497 F.3d 109, 119 (2d Cir. 2007). Likewise, the Court finds here that there are genuine issues of fact that would require a trial on Plaintiff's legal malpractice claim, as well as a resolution of novel questions of New York state law that would be inappropriate for a federal court to adjudicate in light of considerations of federalism and comity.

To prevail on a legal malpractice claim in New York, a plaintiff must show "that the attorney failed to exercise that degree of care, skill and diligence commonly possessed and exercised by a member of the legal community, that such negligence was a proximate cause of the loss in question, and that actual damages were sustained." Barbara King Family Trust v. Voluto Ventures LLC, 849

N.Y.S.2d 41, 43 (N.Y. App. Div. 2007).  Defendants argue that Plaintiff cannot establish any of these elements because (1) the standard for prevailing on a New York legal malpractice claim differs from the standard for prevailing in an ineffective assistance of counsel claim; (2) Plaintiff is at fault, not Defendants, for Plaintiff's guilty plea to a crime he did not commit; and (3) Plaintiff suffered no damages because had he not pled guilty to violating the December 25 T.O.P., he would have had to spend more time in prison for other offenses.

Addressing Defendants' first argument, the Court notes that "[u]nder the state and federal constitutions, a criminal defendant is entitled to the effective assistance of counsel, defined as representation that is reasonably competent, conflict-free and single-mindedly devoted to the client's best interest." People v. Ennis, 872 N.Y.S.2d 364, 409-10 (N.Y. 2008) (citations and quotations omitted).  This standard is similar to the standard of care for a legal malpractice claim, i.e., "that degree of care, skill and diligence commonly possessed and exercised by a member of the legal community." Barbara King Family Trust, 849 N.Y.S.2d at 43.  Additionally, when a plaintiff has unsuccessfully litigated an ineffective assistance of counsel claim, both New York state courts and federal district courts in this Circuit have held that he is collaterally estopped from subsequently bringing a legal malpractice claim.  Kowalcyzk, 994 F. Supp. at 412 (citing Ospina v. Booth, 94 Civ. 8163, 1995 WL 386485, *3 (S.D.N.Y. June 29, 1995); Vavolizza v. Krieger, 33 N.Y.2d 351 (1974); Siddigi v. Ober, Kaler, Grimes & Shriver, 637 N.Y.S.2d 399 (N.Y. App. Div. 1996); McCord v. Bailey, 636 F.2d 606, 611 (D.C. Cir. 1980)).  The Court considers, however, that it would be inappropriate to resolve this question of New York constitutional and civil law at this juncture, where the New York courts have not yet squarely addressed the issue.  In this regard, federalism and comity weigh against retaining supplemental jurisdiction over Plaintiff's legal

-24-

malpractice claim.  See Valencia ex rel. Franco v. Lee, 316 F.3d 299, 306 (2d Cir. 2003);

Rounseville, 13 F.3d at 631.

    Even if the Court were to find that the standards of care in legal malpractice and ineffective

assistance claims are identical under New York law, the question of whether Defendants here

breached that standard is a question of fact more appropriate for resolution by a jury.  See, e.g.,

Padula v. County of Tompkins, 756 N.Y.S.2d 664, 666 (N.Y. App. Div. 2003); Willis v. City of

N.Y., 697 N.Y.S.2d 656, 658 (N.Y. App. Div. 1999); Barshay v. 273 Brighton Beach Ave. Rest.,

Inc., No. 13152/06, 2008 WL 2677535, at *4 (N.Y. Sup. Ct. June 30, 2008) (all finding questions of

breach of duty in negligence cases more appropriate for jury resolution).  Defendants dedicate much

of their Motion and Reply to arguing that Plaintiff intentionally deceived them into believing the

December 25 T.O.P. was valid, because pleading guilty to violating it would help him avoid harsher

sentences for other offenses.  See CML at 5-8, 17-18; Castillo Reply at 5, 7-11.  Defendants

characterize Plaintiff as, inter alia, "deceitful" and "masterfully manipulating the system" as part of

their attempt to show that Plaintiff intentionally misled them.  CML at 13, 16; see also Castillo Aff.

¶¶ 14, 15.  These are at most "conclusory, self-serving statements with no expert or other evidence

which would tend to establish . . . that [Defendants] did not depart from the requisite standard of

care" in this case.  Drazek v. Napoli, Bern, Ripka, LLC, 877 N.Y.S.2d 641, 643-44 (N.Y. Sup. Ct.

2009) (denying motion to dismiss legal malpractice claim).  Without anything further, Defendants

are not entitled to summary judgment on the claim of legal malpractice; the issue of whether their

failure to ascertain the invalidity of the December 25 T.O.P. was a breach of the standard of care

they owed to their client is an issue of fact that is more appropriate for resolution by a jury.

    The issue of whether Defendants' actions were the proximate cause of Plaintiff's conviction

also presents questions of fact that cannot be resolved at the summary judgment stage.  See Am.

Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp., 351 F. Supp. 2d 79, 91 (S.D.N.Y. 2004) (in

malpractice case, issue of proximate cause "generally remains an issue of fact for the jury").  The

New York state standard for ineffective assistance of counsel differs from the federal standard in

that the crux of the inquiry in New York is whether the attorney provided meaningful representation,

whereas the more stringent federal standard requires a defendant to show that "but for" counsel's

failures, the outcome of his case would have been different.  Lemke v. Zurich N. Am., 896 N.Y.S.2d

603, 611 (N.Y. Sup. Ct. 2009).  Thus, as a general rule, "[s]ince New York does not require but for

causality for ineffective assistance, an attorney whose assistance has been found ineffective by the

state standard has not necessarily committed malpractice."  Id.

The Appellate Division's finding on the ineffective assistance of counsel claim is

insufficient to support a finding of legal malpractice here because it does not have preclusive effect

in this case.  The Court is generally required to accord to state court judgments the same force and

conclusive effect that they would have in the states in which they were rendered.  28 U.S.C. § 1738;

Winters v. Lavine, 574 F.2d 46, 54 (1978); see also Kowalcyzk v. Gilroy, 994 F. Supp. 410, 412

(E.D.N.Y. 1998) (applying New York rules of preclusion to legal malpractice claim brought by

plaintiff who had previously brought ineffective assistance of counsel claim in New York state

court).  Under New York rules of preclusion, a party may not relitigate issues that were "clearly

raised and decided against that party in a prior proceeding where the party had a full and fair

opportunity to contest the issue."  Kowalcyzk, 994 F. Supp. at 412 (citing Weiss v. Manfredi, 639

N.E.2d 1122 (N.Y. 1994)).  Here, Defendants did not have a full and fair opportunity to litigate the

issue of whether they provided Plaintiff with effective assistance of counsel, as they were not parties

to the proceedings in state court nor were they in privity to any party in that proceeding.  Gersten v.

Lemke, 0110651/2007, 2008 N.Y. Misc. LEXIS 7852, at *4 (N.Y. Sup. Ct. Feb. 14, 2008).  Plaintiff

is therefore not entitled to invoke the doctrine of collateral estoppel against Defendants here.

      Because the Appellate Division decision does not have preclusive effect in this case, there

remains a genuine issue of fact as to whether Defendants' failure to ascertain the invalidity of the

December 25 T.O.P. was the proximate cause of Plaintiff's injury.  During the CPL 440 proceedings

following the Appellate Division's remand of Plaintiff's case in 2007, Judge Herrick, who had

sentenced Plaintiff in 2005, characterized the Appellate Division's ruling as finding that "the

Temporary Order of Protection . . . was a nullity at the time of the allegation of a violation of

probation and . . . pretty much any fool should have seen that, including me, defense counsel, and

perhaps most importantly the prosecuting agency."  Nov. 14, 2007 CPL 440 Hr'g Tr. (Dkt. No. 53-

3) 3:20 - 4:2.  Judge Herrick also asked Plaintiff: "[H]ad you known that there wasn't an Order of

Protection, you would not have pled guilty, would you?"  To which Plaintiff responded: "No, sir."

Dec. 5, 2007 CPL 440 Hr'g Tr. (Dkt. No. 53-3) 5:17-20.  Without evaluating the truth of his

statement, the Court cannot find that it alone provides a basis for summary judgment on the issue of

whether Defendants' actions were the proximate cause of his injuries here.  See United States v.

Gordon, 156 F.3d 376, 380 (2d Cir. 1998) (habeas petitioner could not establish ineffective

assistance of counsel because "self-serving, post-conviction statement was insufficient by itself to

meet his burden of proving the 'reasonable probability' that he would in fact have accepted the

[plea] offer").

      At the same time, the Court also cannot accept Defendants' arguments that they are entitled

to summary judgment because Plaintiff was the cause of his own conviction.  On the one hand,

attorneys "should not be held liable for ignorance of facts which the client neglected to tell him or her." Green v. Conciatori, 809 N.Y.S.2d 559, 560 (N.Y. App. Div. 2006).  Yet issues of fact remain as to whether Defendants could reasonably be expected to have ascertained the invalidity of the December 25 T.O.P. independently of what Plaintiff either believed or said to them, and whether their failure to do so constituted malpractice.  See Thompson v. Seligman, 863 N.Y.S.2d 285, 286 (N.Y. App. Div. 2008) (denying motion for summary judgment on legal malpractice claim where plaintiff was under mistaken belief as to important fact in case and, despite readily available evidence that would have shown he was mistaken, "there is no record evidence that [the attorney] ever asked to review those documents or made any further inquiry of plaintiff whatsoever regarding the identity of her employer").  The Court finds that on the issue of causation as well as breach, a jury is better suited to weigh the available evidence and the credibility of the parties in this case and determine whether Defendants should be held liable for legal malpractice against Plaintiff.

Having concluded that genuine issues of fact remain that require a trial, the Court finds that judicial economy, as well as federalism and comity, warrant dismissing Plaintiff's legal malpractice claim.  As to the issue of fairness, the Court notes only that the parties have not fully briefed the issue of whether this claim would be barred in New York state court.  Defendants briefly claim in their Reply Motion that the claim is time-barred.[2]  Defs.' Reply at 13.  In a response that the Court

---

[2] While relevant to the issue of whether fairness compels retaining supplemental jurisdiction, the Court does not consider the statute of limitations an effective defense here because Defendants waited until filing their Reply to raise it.  The statute of limitations is an affirmative defense that is waived if not raised.  FED. R. CIV. P. 8(c); Kropelnicki v. Siegel, 290 F.3d 118, 130 n.7 (2d Cir. 2002) (quoting Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995)).  Although Defendants raised the statute of limitations as a defense in their Reply Motion, Plaintiff was not permitted to respond to the Reply under the Local Rules.  Defs.' Reply at 13; L.R. 7.1(b)(1).  Sua sponte dismissal of this claim as time-barred would therefore be unwarranted here, because Plaintiff was entitled to notice and an opportunity to be heard as to why his claim was nonetheless timely.  See Abbas v. Dixon, 480 F.3d 636, 640 (2d Cir. 2007) ("The pleading requirements in the Federal Rules of Civil

-28-

ordered stricken from the record as a sur-reply prohibited by Local Rule 7.1(b)(1), Plaintiff states

only in passing that the statute of limitations has expired but that New York law will permit him to

re-file his state malpractice claim.  Dkt. No. 57 at 32 (citing N.Y.C.P.L.R. § 205(a)).  Given the

scant briefing on this issue, and Plaintiff's apparent belief that he will be permitted to re-file his

claim in state court, the Court concludes that on balance declining to exercise supplemental

jurisdiction is warranted here.  See Roffman v. Knickerbocker Plaza Assocs., No. 04 Civ. 3885,

2008 WL 919613, at *16 (S.D.N.Y. Mar. 31, 2008) (finding that fairness did not compel retaining

supplemental jurisdiction where "[n]o party has raised an issue of a time-bar under the statute of

limitations if the action were dismissed and the claims reasserted in state court").  Moreover, the

Court finds that the interests of fairness dictate that dismissal without prejudice is appropriate here

in order to allow Plaintiff to pursue the action in state court if he so chooses.  See Healy v. City of

N.Y. Dep't of Sanitation, 286 Fed. Appx. 744, 746-47) (2d Cir. 2008); Cave v. East Meadow Union

Free School Dist., 514 F.3d 240, 250 (2d Cir. 2008).

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants Heid, City of Albany, and Albany Police Department's Motion

for summary judgment (Dkt. No. 47) is **GRANTED**; and it is further

**ORDERED**, that Defendants Muia, Castillo, and Albany County Conflict Defenders'

Motion for summary judgment (Dkt. No. 37) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Motion in opposition to summary judgment and Cross-Motion

for summary judgment (Dkt. No. 53) is **DENIED**; and it is further

---

Procedure . . . do not compel a litigant to anticipate potential affirmative defenses, such as the
statute of limitations, and to affirmatively plead facts in avoidance of such defenses.").

**ORDERED**, that summary judgment is **GRANTED** for Defendants Heid, City of Albany, and Albany Police Department; and it is further

**ORDERED**, that summary judgment is **GRANTED** in favor of Defendants Muia, Castillo, and Albany County Conflict Defenders with respect to Plaintiff's § 1983 claims; and it is further

**ORDERED**, that Plaintiff's legal malpractice claim is **DISMISSED without prejudice**, consistent with this Memorandum and Order; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**


DATED:      August 04, 2011
            Albany, New York


Lawrence E. Kahn
U.S. District Judge